# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

KIRK B. REAMS,

       Plaintiff,

v.                                  CASE NO. 4:18cv154-RH/CAS

RICK SCOTT, in his official
capacity as Governor of Florida,
and JOE NEGRON, in his official
capacity as President of the
Florida Senate,

       Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This case presents a question under the Due Process Clause: whether an elected state official who has a property or liberty interest in his position may be suspended for more than a year without being afforded any opportunity to be heard. The answer is no.

### I

In Florida, each county has a clerk of court elected for a four-year term. A clerk can be removed during the term only for cause. Removal is a two-step

process: first, suspension by the Governor; second, removal or reinstatement by the Senate.

The Governor suspended the elected clerk of Jefferson County, Kirk B. Reams, on October 18, 2017. The Governor issued an executive order setting out two charges, both explicitly based on an investigation by the Florida Department of Law Enforcement. The first charge was that Mr. Reams used his official position to gain access to a government facility after hours to engage in inappropriate conduct with a paramour. The second charge was that Mr. Reams allowed the paramour unauthorized access to and use of a county laptop computer. The government facility, though not identified in the Governor's order, was the county courthouse. By the time of the order, the paramour was an ex-paramour; indeed, she provided the information that led to the FDLE investigation.

The Governor did not give Mr. Reams an opportunity to be heard prior to the suspension and still has not done so. The Senate has not given Mr. Reams an opportunity to be heard and has not acted on the suspension. So the status is this: Mr. Reams, an elected official who could be removed only for cause, has been suspended for more than a year based on allegations of misconduct, without being afforded any opportunity at all to be heard.

## II

Mr. Reams filed this action against the Governor and the President of the Senate in their official capacities. The defendants moved to dismiss and for summary judgment. The court gave notice under Federal Rule of Civil Procedure 56(f) that summary judgment might be entered for either side. The motions have been fully briefed and orally argued. This order confirms and briefly summarizes the ruling tentatively announced on the record.

## III

The Fourteenth Amendment's Due Process Clause prohibits a state from depriving a person of "life, liberty, or property, without due process of law." The clause applies to Mr. Reams only if he has a "property" interest in his position as clerk or a "liberty" interest in defending against the Governor's allegations.

A state employee ordinarily has a "property" interest in a job if the employee can be terminated only for cause. *See, e.g.*, *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972). Whether the same is true of an *elected official* is less clear. In *Velez v. Levy*, 401 F.3d 75, 86-87 (2d Cir. 2005), the Second Circuit held that an elected official did *not* have a property interest in her job, even though she could be removed only for cause.

Here, Mr. Reams alleges, and the Governor and the President of the Senate both agree, that Mr. Reams has a property interest in his position as clerk. This order assumes that is so, even though *Velez* is to the contrary.

The "property" issue may not matter anyway. Under the "stigma-plus" doctrine, when the termination of an employee is accompanied by sufficiently serious, public allegations of misconduct, the action implicates the employee's interest in "liberty." *See, e.g.*, *Behrens v. Regier*, 422 F.3d 1255, 1263 n.14 (11th Cir. 2005) (collecting cases); *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302-03 (11th Cir. 2001). This apparently is so even for an elected official. *See Velez*, 401 F.3d at 87-88. Mr. Reams's suspension, together with the public airing of the allegations against him, deprived him of liberty, regardless of whether the suspension also deprived him of property.

## IV

The Due Process Clause does not prevent a state from depriving a person of property or liberty. A state must, however, provide due process in connection with the deprivation. *See, e.g.*, *Roth*, 408 U.S. at 569-70; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). This often means an opportunity to be heard

before the deprivation occurs. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 582-83 (1975); *Reams v. Irvin*, 561 F.3d 1258, 1263 (11th Cir. 2009). But a state sometimes has an interest in acting more swiftly; when that is so, the opportunity to be heard must be provided "as soon as practicable." *Goss*, 419 U.S. at 583. How extensive the opportunity to be heard must be depends on the circumstances, including the nature of the property or liberty interest and the manner of its deprivation. *See Mathews*, 424 U.S. at 334-35; *see also Nash v. Auburn Univ.*, 812 F.2d 655, 663 (11th Cir. 1987) (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).

The State of Florida has deprived Mr. Reams of his position for now more than a year. He has had no opportunity to be heard. He could easily have been provided an opportunity to be heard long ago—by the Governor, and also by the Senate. The failure to provide an opportunity to be heard for these many months violated the Due Process Clause. It is as straightforward as that.

## V

The defendants' many contrary arguments are incorrect. Only some warrant discussion.

### A

The defendants say Mr. Reams has only been suspended, not finally removed, and that he therefore has not been deprived of his constitutionally

protected property interest. But at least since *Goss*, it has been established that the Due Process Clause applies to a significant though temporary deprivation of a protected interest; a permanent deprivation is not required. *See Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992). In any event, Mr. Reams has been closed out of his job and has not been paid during the suspension. The Due Process Clause applies.

<div align="center">B</div>

The defendants say the state's suspension-and-removal procedure was in place before Mr. Reams took the job, that he knew it, and that he took the job subject to that procedure. The defendants say they complied with state law and that this entitles them to prevail. But compliance with state law of course does not excuse a violation of the United States Constitution. *See, e.g.*, *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954).

The defendants fare no better when their assertion is recast more charitably—not as an assertion that state law prevails over the Due Process Clause but as an assertion that compliance with the preestablished procedures for suspending and terminating an employee constitutes all the process that is due. The Supreme Court flatly rejected that assertion in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). There the defendant school board asserted its employees' property interest could be limited by the procedures the state had in

place for terminating their employment. After citing cases inconsistent with that assertion, the Supreme Court continued: "If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Id*. at 541.

The procedure due Mr. Reams is established by the Due Process Clause, not by state law.

C

The defendants say this case is controlled by *Fair v. Kirk*, 317 F. Supp. 12 (N.D. Fla. 1970), *aff'd*, 401 U.S. 928 (1971). There, Governor Kirk suspended a supervisor of elections, Mr. Fair, without a predeprivation hearing. The basis was Mr. Fair's alleged failure to properly perform his duties under the state's election laws. Within three months, Mr. Fair received due process in spades—a full-blown evidentiary hearing with attorneys and dozens of witnesses, followed by a final decision. *Id*. at 14. Mr. Fair did not challenge the timeliness or sufficiency of that hearing; he challenged only the failure to provide a *predeprivation* hearing. *Id*. The district court rejected the challenge. The Supreme Court affirmed without opinion.

*Fair* predates *Goss* and most of the decisions that guide current due-process analysis. This order assumes, though, that the Supreme Court's affirmance in *Fair* remains binding. Even so, the decision establishes only that Mr. Fair—who faced

charges much different from those against Mr. Reams—did not have a right to a predeprivation hearing. A state may have a compelling, urgent interest in removing an inept supervisor of elections when an election is forthcoming. The state's interest is much less urgent in removing a clerk who apparently is properly performing his duties but who, in the past, engaged in misconduct with a now-estranged paramour.

More importantly, Mr. Fair received full due process within three months—perhaps about as quickly as a full evidentiary hearing of that magnitude could be arranged. Mr. Reams has been waiting more than a year for any process at all. His suspension occurred after, and was expressly based on, an FDLE investigation. Armed with the report of that investigation, surely the state could have been ready for a full evidentiary hearing long ago—and could have provided a rudimentary opportunity to be heard within days after, if not before, the suspension. *Fair* does not establish that the treatment of Mr. Reams was constitutional.

## D

The defendants say the delay in scheduling a hearing has been Mr. Reams's own fault—that had he not filed this lawsuit, he might already have had his hearing. The assertion fails on the facts and the law.

First the facts. State law did not require the Governor to give Mr. Reams an opportunity to be heard before or after the suspension, but state law also did not

forbid it. The Governor decided on his own not to provide that opportunity. The decision was not Mr. Reams's fault.

For its part, the Senate took no action during the pendency of a misdemeanor charge against Mr. Reams alleging the same misappropriation of a government laptop computer alleged in the Governor's suspension order. A jury acquitted Mr. Reams on January 11, 2018. The Senate was in session at that time and, under Florida law and the Senate's own procedures, could have addressed the suspension. Mr. Reams implored the Senate to do so, never once suggesting a delay. The Senate chose not to act. The Senate adjourned on March 11, 2018, with no plan to return until 2019 and no plan to address Mr. Reams's suspension in the meantime.

Mr. Reams filed this lawsuit nine days later, on March 20, 2018. The Senate says that under its rules, the filing of the lawsuit tolled the deadline for the Senate to initiate a proceeding. But the deadline was only for the Senate to initiate a proceeding, not for the Senate to afford Mr. Reams an opportunity to be heard or to make a decision. The Senate was not going to be in session and was not going to act—further forbearance by Mr. Reams would have changed nothing. And if filing the lawsuit extended the deadline for the Senate to initiate a proceeding, it did not *prevent* the Senate from acting sooner; the Senate, like the Governor, decided on its own not to afford Mr. Reams a timely opportunity to be heard. The Senate's delay was not Mr. Reams's fault.

The defendants' assertion also does not square with the law. Mr. Reams was entitled to an opportunity to be heard at a reasonable time and in a reasonable manner. When the state denied him that right, he was entitled to seek redress in federal court, as he did. The state was not entitled to retaliate against Mr. Reams for filing this action. Indeed, the state's assertion that it can prolong Mr. Reams's suspension because he filed this lawsuit comes dangerously near an additional constitutional violation.

## E

The Governor says he did all he was required to do—that he was not required to provide an opportunity to be heard before the suspension, that his role ended at that point, and that the responsibility for the further delay rests with the Senate. But the Governor initiated the process that deprived Mr. Reams of his property and liberty without the constitutionally required due process of law. More importantly, the Governor is the state official who can set it right—who can withdraw the suspension at the stroke of a pen, or who can afford Mr. Reams an opportunity to be heard on whether the suspension should continue. Under *Ex parte Young*, 209 U.S. 123 (1908), the Governor is a state official who can be ordered to end the constitutional violation.

F

The President of the Senate cites cases in which public employees received evidentiary hearings long after a suspension or termination. *See, e.g.*, *Loudermill*, 470 U.S. at 547 (nine-month delay); *Collins v. Sch. Bd. of Dade Cty., Fla.*, 981 F.2d 1203, 1205-06 (11th Cir. 1993) (19-month delay). The Senate says these cases establish that a delay as long as suffered by Mr. Reams is not unconstitutional.

The President misses the essential point. In *Loudermill*, the Court held that the nine-month delay in conducting a full evidentiary hearing was not unconstitutional *so long as the employees received the predeprivation opportunity to be heard to which they were entitled under state law*. *Loudermill*, 470 U.S. at 547-48. The Court remanded the case for a determination of whether that occurred. This made clear that, if the employees received a predeprivation hearing, the nine-month delay was permissible—but if not, then the nine-month delay was unconstitutional. Far from supporting the defendants, *Loudermill* makes clear that Mr. Reams, who has had no opportunity to be heard at all, is entitled to prevail.

*Collins*, too, speaks to a delay in conducting a full evidentiary hearing, without suggesting in any way that this obviates the need for a predeprivation or prompt postdeprivation opportunity to be heard.

# VI

The bottom line is this. Mr. Reams's right to due process of law was violated when he was denied an opportunity to be heard before or promptly after his suspension. This order remedies the violation by requiring prompt, appropriate procedures. The order speaks not at all to the substantive grounds for the suspension. Whether Mr. Reams's conduct warranted suspension, and whether the conduct warrants termination, are questions of state law not at issue in this federal litigation.

IT IS ORDERED:

1. Summary judgment is granted for Mr. Reams against the Governor and President of the Senate. It is declared that Mr. Reams is entitled to an appropriate opportunity to be heard, withdrawal of his suspension, an appropriate hearing, or reinstatement. An injunction is entered as set out below.

2. By November 30, 2018, the Governor must vacate his order suspending Mr. Reams unless (a) the Governor has provided Mr. Reams an appropriate opportunity to be heard or (b) the Senate has reinstated Mr. Reams or (c) the Senate has removed Mr. Reams after an appropriate hearing.

3. An appropriate opportunity to be heard means (a) an opportunity to present evidence to the Governor, either in writing or through witnesses at the Governor's election, and (b) an opportunity to present argument to the Governor,

either in writing or orally at the Governor's election. The Governor may rely on staff to summarize evidence presented in writing and to summarize a written argument exceeding 3,200 words but must himself review a written argument not exceeding 3,200 words.

4. An appropriate hearing means an evidentiary hearing (or, if Mr. Reams consents, a nonevidentiary hearing) conducted by the Senate, a Senate committee, or a special master. Evidence may, at the Senate's election, be taken in writing or through witnesses; the rules of evidence need not apply.

5. This injunction binds the Governor, the President of the Senate, and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

6. All pending motions are denied.

7. The clerk must enter judgment and close the file.

8. The court retains jurisdiction to enforce the injunction.

SO ORDERED on November 6, 2018.

<div style="margin-left:40%">

s/Robert L. Hinkle_____
United States District Judge

</div>